IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| COLORADO RIVER INDIAN TRIBES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-cv-00901L |
| | ) | Senior Judge Loren A. Smith |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| ______________________________ | ) | |

# JOINT PRELIMINARY STATUS REPORT

Pursuant to Appendix A of the Rules of the Court of Federal Claims ("RCFC"), Plaintiff Colorado River Indian Tribes ("CRIT") and Defendant United States of America hereby submit this Joint Preliminary Status Report ("JPSR").[1]

## I. CRIT'S INTRODUCTORY STATEMENT

This is an action by an Indian tribe asserting claims against the United States under the Tucker Act, 28 U.S.C. § 1491, and the Indian Tucker Act, 28 U.S.C. § 1505, for breach of fiduciary duty in administering the tribe's assets and funds. CRIT filed this case on December 27, 2006. See Dkt. 1. On February 21, 2008, before the United States had filed its Answer, CRIT filed an Amended Complaint. See Dkt. 17. On March 11, 2008, the United States filed its Answer in response to CRIT's First Amended Complaint. See Dkt. 18.

For more than a year after this case originally was filed, CRIT and the Government postponed active litigation while they engaged in an informal process of discovery and exploring a potential resolution. In CRIT's view, little was accomplished and progress was glacial. A

1 On May 5, 2008, the Parties filed a joint motion seeking this Court's permission to file this JPSR by May 19, 2008. See Dkt. 19. This Court granted the joint motion on May 7, 2008. See Dkt. 20. On May 19, 2008, the Parties filed a further joint motion seeking the Court's permission to file this JPSR by May 27, 2008. See Dkt. 21. The Court granted this motion on May 22, 2008. See Dkt. 22. On May 27, the Parties filed a further joint motion seeking the Court's permission to file this JPSR by June 3, 2008. See Dkt. 23.

confidentiality agreement was executed after months of prolonged negotiations, but only a minimal amount of documents were produced by the Government. CRIT eventually concluded that the only way to move this case forward to resolution is through the litigation process, with discovery deadlines and a firm trial date.

CRIT proposes below a division of the case into phases, along with a discovery and trial schedule for the first phase. CRIT does not share the Government's view that the scheduling of discovery and trial should await the Court's ruling on threshold jurisdictional issues. The Government is free to file whatever motions it chooses, but the claims being raised in the first phase clearly fall within the Court's jurisdiction.

## A. PROPOSED DIVISION OF CASE INTO PHASES

Given the size of this case -- both in terms of the claims asserted and the long time period over which those claims allegedly arose -- CRIT proposes that it be divided into the four phases discussed below. Only Phase I would be placed on a trial track at this point, although certain document discovery relating to Phase II would be accomplished at the same time as related discovery for Phase I because that is the most efficient approach.

### 1. Phase I: Claims Arising From 1972-1992

Phase I encompasses the period from July 1, 1972 to September 30, 1992, which is the period that previously was analyzed for the United States by Arthur Andersen LLP in the late 1980's and early 1990's as part of the Twenty Year Reconciliation Project, which was an effort to evaluate the Government's management of tribal monies during that period. The so-called “AA reports” prepared by Arthur Andersen to summarize the results of their analysis have become a focal point for much of the tribal breach of trust litigation before this Court. Specifically, Phase I will address the following claims:

1. Under-Collection Claim. CRIT's principal asset is its Reservation land, much of which is leased for agricultural or commercial purposes. This claim involves losses allegedly resulting from the Government's alleged failure to collect or deposit all amounts due to CRIT pursuant to applicable regulations and/or lease terms, as well as other revenues the Government was responsible for collecting for CRIT's benefit.

2. Funds Mismanagement Claim. This claim concerns losses resulting from the Government's alleged failure to manage revenues it collected and held for CRIT's benefit appropriately, such as mis-stated or unaccounted-for receipts of monies, undocumented or invalid disbursements of CRIT's funds, and losses resulting from excessive "lag time" regarding the deposit or disbursement of funds.

3. Investment Mismanagement Claim. This claim concerns losses allegedly resulting from the Government's alleged failure to invest CRIT's trust funds so as to achieve the maximum available return. The rate(s) of return that the Government should have obtained would be used to compute damages not only with respect to the monies actually held in CRIT's trust accounts, but also with respect to the "missing funds" resulting from under-collection and funds mismanagement (i.e., claims 1 and 2, above).

**2. Phase II: Claims Arising Before 1972 and After 1992**

The substantive claims included in Phase II are identical to those covered by Phase I, but the relevant time period is prior to July 1, 1972 and after September 30, 1992 (i.e., before and after the Phase I period). CRIT is hopeful that the resolution of the Phase I claims, whether through settlement or after trial, may facilitate a settlement of the Phase II claims. Depending on the prospects of settlement, the Phase II claims may or may not be placed on a trial track

following the conclusion of Phase I. Likewise, depending on how matters progress, it may become desirable to divide the Phase II claims so that the two time periods are handled separately.

**3. Phase III: Trespass Claims**

Phase III addresses CRIT's allegation that the Government permitted trespass to occur by failing, or delaying excessively, to remove individuals who unlawfully occupied CRIT's land, e.g., lessees who stopped making payments due under their leases. These claims are far smaller in scope and potential damages than those involved in the other phases, and CRIT believes that the prospects for settling these should be relatively favorable.

**4. Phase IV: Irrigation Project Claim**

This phase concerns CRIT's allegation that the Government has improperly allowed the irrigation system on the Colorado River Indian Reservation to fall into disrepair.

## II. DEFENDANT'S INTRODUCTORY STATEMENT

On December 27, 2007, CRIT filed this case, asserting claims against the United States under the Tucker Act, 18 U.S.C. § 1491, and the Indian Tucker Act, 28 U.S.C. § 1505. See Dkt. 1. On February 21, 2008, before the United States filed its Answer in this case, CRIT filed an amended complaint. See First Amended Complaint, filed Feb. 21, 2008 (Dkt. No. 17). CRIT alleges generally that the United States breached its fiduciary duty in its administration of CRIT's trust funds and assets, and seeks compensatory or monetary damages. Id.

Also on December 27, 2007, CRIT filed a case in the United States District Court for the District of Columbia, requesting declaratory and injunctive relief. See Colo. River Indian Tribes v. Kempthorne, No. 06-CV-2212-JR (D.D.C.), Complaint, filed Dec. 27, 2007 (Dkt. 1). On February 20, 2008, CRIT filed an amended complaint. See id., First Amended Complaint, filed

Feb. 20, 2008 (Dkt. 24). In its district court case, CRIT alleges generally that the United States breached its fiduciary duties to CRIT, and seeks an accounting of its trust funds and non-monetary trust assets. Id.

As set forth in the Answer the United States filed in this case on March 11, 2008, see Dkt. 18, and as discussed in greater detail below, the United States asserts various jurisdictional defenses that bar all or some of CRIT's claims in this litigation. At the outset, the United States takes the position that 28 U.S.C. § 1500 deprives this Court of jurisdiction over this case, given the pendency of CRIT's litigation in the District Court, and the United States intends to seek dismissal of the case on that basis. For reasons of judicial efficiency and economy and to conserve the parties' and the Court's limited litigation resources, the Court should stay the litigation of this case pending its adjudication of the United States' motion to dismiss.

In the event that the Court finds that it has jurisdiction in this case and after CRIT has clearly defined and delineated its claims, the United States intends to raise its other jurisdictional defenses, if warranted, including, without limitation to, the applicable statute of limitations, the failure to state money-mandating claims, *res judicata*, and the exclusive jurisdiction of the Indian Claims Commission under the Indian Claims Commission Act. The United States proposes to apply this approach to the phased case procedure that CRIT proposes in this JPSR

To the extent that the Court has jurisdiction over any of Plaintiff's claims, the United States believes that dispositive motions practice and/or trial will be necessary to resolve those claims. At this time, however, the United States proposes that the Court postpone scheduling of any fact discovery, expert witness discovery, or pre-trial and trial dates until the Court rules on the threshold jurisdictional issues.

In its introductory statement to this JPSR, among other things, CRIT makes various

allegations and arguments, including, but not limited to, characterizations about the parties' informal settlement discussion process, which the parties conducted in good faith. The United States takes exception to these allegations and arguments that are more appropriate for a motion or a brief, rather than a JPSR. Nonetheless, it will not respond to CRIT's assertions in this JPSR, other than to state its objections thereto, because it holds the view that, while the JPSR is an appropriate court-ordered forum for the parties to identify potentially dispositive factual and legal issues, claims and/or defenses, the JPSR is not a tool for making legal arguments to the Court or leveling inappropriate charges. Presentation of such arguments or allegations should occur at the appropriate time this Court designates and in accordance with the RCFC. As such, the United States limits its contributions to the JPSR to the identification and summary of the appropriate factual and legal issues that it believes are necessary to inform the Court about the United States' views about the handling and disposition of this case.

## III. PARTIES' REPORT PURSUANT TO RCFC APPENDIX A

On May 1, 2008, the parties participated in a formal teleconference that involved the attorneys of record and all other necessary attorneys "knowledgeable about the case, the identity of witnesses, and the location of documents." RCFC, App. A, Part II.3. The following attorneys attended the teleconference:

1. Counsel of Record for CRIT: Steven Gordon

2. Counsel of Record for the United States: Matthew M. Marinelli

3. Other Counsel for CRIT: Stephen McHugh, Eric Shepard

4. Other Counsel for the United States: Mark S. Barron and Anthony P. Hoang, United States Department of Justice; Teresa E. Dawson, Office of the Chief Counsel, Financial Management Service, United States Department of Treasury; Kenneth Dalton and Jason Hartz,

Office of the Solicitor, United States Department of Interior.

Counsel for the parties discussed their positions on the several items set forth in RCFC Appendix A.

**A. Does the Court have jurisdiction over the action?**

CRIT's Position:

The Court has jurisdiction over this action. As set forth in Part III.E., infra, CRIT disagrees with the Government that 28 U.S.C. § 1500 bars this Court's jurisdiction in this case. CRIT also disagrees with the Government that a detailed specification of CRIT's claims, beyond that outlined above, is necessary or warranted in this case. The claims asserted in Phase I plainly are not barred by the statute of limitations nor is there any question that they are based on money-mandating duties. These are the very sort of claims that the Federal Circuit ruled are not time-barred in Shoshone Indian Tribe v. United States, 364 F.3d 1339, 1351 (Fed. Cir. 2004): "claims that allege the Government mismanaged funds after they were collected, as well as any claims that allege the Government failed to timely collect amounts due and owing to the Tribe[]."

United States' Position:

As stated above, 28 U.S.C. §1500 bars this Court's jurisdiction in this case, given the pendency of CRIT's trust accounting case in the District Court. Also, the claims that CRIT raises in this case suffer from several possible jurisdictional deficiencies that may potentially: (1) result in a dismissal of the Complaint in its entirety; or (2) dispose or limit the scope of certain claims. See also Part II, supra. As noted above, the statute of limitations, 28 U.S.C. § 2501, may bar some or all of CRIT's claims. The Court may also lack jurisdiction over those claims for which Plaintiff is unable to identify a substantive source of law—such as a statute, treaty, or

regulation—that establishes a specific fiduciary money-mandating duty or that was within the exclusive jurisdiction of the Indian Claims Commission. In addition, depending on CRIT's detailed specification of its claims, the United States may raise the defenses of claim and/or issue preclusion. Assuming that 28 U.S.C. § 1500 does not preclude the Court's jurisdiction in its case and before the United States can determine which, if any, of Plaintiff's claims are time-barred, lack jurisdictional basis, or implicate preclusion doctrines, however, CRIT must provide a detailed specification of its claims, as well as the factual and legal bases thereof. Some limited discovery related to the factual bases of CRIT's claims may be necessary. Once CRIT has made the requisite detailed claim specification, the United States will file any appropriate jurisdictional motion.

**B. Should the case be consolidated with any other case and, if so, why?**

At this time, the parties do not believe this case should be consolidated with any other case.

**C. Should the trial of liability and damages be bifurcated, and if so, why?**

CRIT's Position:

CRIT submits that the case should be divided into phases as discussed above. See Part I.A-D, supra. But CRIT does not believe that trial of liability and damages for each phase should be bifurcated. Unlike the Government, CRIT sees no risk that trying both issues together will confuse the Court or undermine the accurate resolution of the issues. To the contrary, it is pointless to separate the issues of liability and damages.

For example, with regard to CRIT's Under-Collection Claim, there is no question that the Government would be liable if it failed to collect or deposit all amounts due to CRIT pursuant to applicable regulations or lease terms. The only real issue will be whether, and to what extent, the

Government failed to do so. Proof of damages will be inextricably intertwined with proof of liability. The same is true of the Funds Mismanagement Claim and the Investment Mismanagement Claim. Adjudication of these claims may involve deciding certain predicate issues such as the permissible "lag time" between collection of funds and their deposit into a tribal trust account, or determining whether the Government should have "pooled" CRIT's trust funds when investing them –as it pooled Individual Indian Money and other trust funds-- in order to obtain a maximum return. But resolution of these issues does not require a separate trial on liability. CRIT submits that, far from promoting an expeditious and efficient resolution of its claims, bifurcation of the trial of liability and damages is simply a recipe for further delay.

United States' Position:

The United States does not object to dividing the case into phases, as CRIT proposes above. Trial of liability and damages, however, should be bifurcated. Each phase of this case will present significant and complex questions of fact and law and will involve the review of a voluminous documentary record. Combining the trial of liability and damages poses the significant risk that facts and legal arguments relevant to only one matter will be conflated with, and ultimately undermine, the accurate and proper resolution of the other.

Further, the issues of liability and damages in this case are not inherently related or legally dispositive of each other. It is possible that the Court could hold the United States liable for mismanagement of trust funds, and then determine that this mismanagement did not cause any damages. Conversely, it is possible that the Court could make a finding that, although CRIT has suffered losses, those losses are not the result of any actions for which the United States can be held liable. Because it is only necessary for the Court to reach the issue of damages if the United States is found to be liable for a breach of trust, judicial efficiency counsels that the Court

and the parties preserve their limited resources with respect to taking discovery, briefing, and preparing for trial on any damages claims, until after it becomes clear that the parties and the Court need to address the matter.

Finally, amalgamating discrete issues may prejudice the parties' ability to appeal various decisions that the Court may make and has the potential to delay ultimately the final resolution of this case. Orders that resolve parts of a claim or individual issues within a claim do not meet the finality test. The United States envisions that the parties may request the Court make a number of jurisdictional and merits based rulings, before each phase of this case goes to trial. It is possible that one or both of the parties may feel that a liability ruling the Court might make involves a controlling and significant issue of law about which there is substantial ground for disagreement and the resolution of which ultimately might advance the expeditious resolution in this case. Combining the trial of liability and damages threatens the finality of the Court's liability decisions and could potentially delay the appellate court's opportunity to consider these questions. As such, bifurcation of the trial of liability and damages may allow the parties to conclude this case sooner and more efficiently than if the issues are conglomerated.

**D. Should further proceedings in the case be deferred pending consideration of another case before this court or any other tribunal and, if so, why?**

CRIT's Position:

CRIT does not believe that further proceedings in this case should be deferred pending consideration of another case before this Court or any other tribunal. CRIT opposes the Government's proposal that the Court stay proceedings in this case until after resolution of CRIT's action in the United States District Court for the District of Columbia which seeks an accounting, but no monetary relief, from the United States. Colorado River Indian Tribes v.

Kempthorne, No. 06-CV-2212-JR (D.D.C.).

The Government argues that any accounting produced pursuant to the district court action would be likely to inform CRIT's claims and the United States' defenses in the action before this Court. But the resolution of the district court case is still years away by any realistic estimate, and it is far from certain that it will produce an adequate accounting. CRIT's accounting claim is one of 38 tribal accounting actions pending before the D.C. District Court. These lawsuits concern the accounting claims of 54 distinct tribal governments (about one-tenth of the federally recognized Indian tribes in the United States), as well as two proposed class actions that may add the accounting claims of several *hundred* additional Indian tribes. (Furthermore, similar accounting actions are simultaneously pending before district courts in other federal circuits). These suits follow the seminal accounting suit brought by Individual Indian Money ("IIM") account holders in Cobell v. Kempthorne, No. 96-CV-1285-JR, which has been pending in the same D.C. district court for twelve years and wherein the court recently determined that the Department of the Interior is unable to perform an adequate accounting. See Cobell v. Kempthorne, 532 F.Supp.2d 37, 103 (D.D.C. 2008).

There is no plausible basis for deferring progress in the case at bar based on the hope that the Government might –at some undefined point-- produce an accounting that might provide a basis for "informing" CRIT's claims in this proceeding. Furthermore, the Government itself recently confirmed during the accounting litigation before the D.C. district court that numerous, complicated threshold issues must be resolved before it can begin to make meaningful progress in fulfilling its tribal accounting obligations: "The resolution of disputes with tribes over historic trust account balances and other accounting related claims is a complex, multi-faceted endeavor and does not have easy solutions." Memorandum in Support of Defendants' Motion For Remand

and Stay of Litigation, filed August 11, 2007 at 39. For example, in a tribal breach of trust case filed in this Court in 1992, the Government is still unable to provide a historical accounting that is sufficiently "complete" to commence the running of the statute of limitations. See, Chippewa Cree v. United States, 69 Fed. Cl. 639, 663-665 (2006).

In sum, CRIT submits that deferring proceedings in this case is simply another recipe for delay that will prejudice its right to relief.

United States' Position:

As noted above, CRIT has filed a companion case to this action in the United States District Court for the District of Columbia. See Colo. River Indian Tribes v. Kempthorne, No. 06-CV-2212-JR (D.D.C.). Assuming *arguendo* that 28 U.S.C. § 1500 does not preclude this Court's jurisdiction in this case, if litigation were to proceed in this Court along a track parallel and simultaneous to the district court litigation, there is a substantial risk of duplicative litigation, needless expenditure of the Court's and the parties' limited resources, and inconsistent rulings between federal tribunals. Both courts may be asked to address the nature and extent of the United States' accounting duty, as well as to evaluate and analyze the financial transactions that underlie the actions in this Court and the District Court. This factual overlap raises the significant risk that a judgment from this Court could be duplicative of, inconsistent with, or even contravene any ultimate determination that the District Court may make.

Moreover, CRIT alleges that, "[u]pon information and belief, Defendants' mismanagement of trust funds has resulted in losses to trust beneficiaries. However, the extent of such losses [due to the United States' alleged mismanagement of trust funds] is unknown to CRIT because Defendants have failed to provide CRIT with a reliable, accurate or complete accounting of its trust funds." Colo. River Indian Tribes v. Kempthorne, No. 06-cv-02212-JR

(D.D.C.), Second Amended Complaint ¶ 19, at 6, filed May 20, 2008 (Dkt. 39). CRIT further alleges that an accounting is "essential to determining whether [its] assets and funds have been properly administered." Id. ¶ 37, at 11. Contrary to CRIT's suggestion, it makes little or no sense to attempt to determine damages in this Court when CRIT is pursuing a companion case in which it seeks to obtain an accounting that CRIT alleges is necessary to determine whether mismanagement and damages occurred. Accordingly, in the event that this Court finds that it has jurisdiction to hear this case at this juncture, the Court should stay proceedings until after resolution of CRIT's companion case in the District Court.

The appropriate sequencing of the resolution of CRIT's trust fund mismanagement claims calls for CRIT's trust accounting claims to be resolved in the district court first, before this Court can adjudicate the merits of those claims. Any accounting produced pursuant to the district court action would be likely to inform CRIT's claims and the United States' defenses in the action before this Court. The appropriate forum for compelling an accounting, in advance of a determination of liability for any mismanagement claims that an accounting could possibly reveal, is the District Court, where CRIT's claim seeking an accounting from the Department of the Interior, through its request for declaratory and injunctive relief, is currently pending. Finally, the United States notes that there are significant factual and legal differences between Cobell v. Kempthorne, No 96-CV-1285-JR (D.D.C.), and the Tribal trust accounting cases that CRIT references.

**E. In cases other than tax refund actions, will a remand or suspension be sought and, if so, why and for how long?**

CRIT's Position:

CRIT does not intend to seek any remand or suspension. CRIT opposes the

Government's suggestion that all proceedings in this case be suspended pending resolution of a motion to dismiss pursuant to 28 U.S.C. § 1500. In The Tohono O'odham Nation v. United States, 79 Fed.Cl. 645 (2007), the court concluded that this statute divested it of jurisdiction over a tribe's damages claim because that claim arose from the same operative facts and sought the same relief as the tribe's parallel accounting claim in district court. Id. at 659. In Tohono, however, the plaintiff tribe had requested some forms of monetary relief in the district court (i.e. disgorgement and restitution) and then refused to disavow those claims for relief when pressed on the point by the Court of Federal Claims. Here, in contrast, CRIT has sought only equitable relief in the district court and has confined its request for a monetary remedy to this Court. The Government is free to file a motion to dismiss this case pursuant to 28 U.S.C. § 1500, but there is no good reason for the Court to suspend all proceedings pending its resolution. Once again, the Government suggests the most time-consuming approach possible.

United States' Position:

The United States respectfully refers the Court to the position that it set forth in response to Question D above. At a minimum, the United States believes that the Court should suspend all proceedings in this case pending the Court's resolution of the United States' intended motion to dismiss pursuant to 28 U.S.C. § 1500, except for certain limited discovery about the timing of CRIT's filing of this case and its companion case in the district court, which the United States may need to undertake before it can file its motion.

**F. Will additional parties be joined? If so, the parties shall provide a statement describing such parties, their relationship to the case, the efforts to effect joinder, and the schedule proposed to effect joinder.**

The parties do not anticipate the joinder of any additional party.

**G. Does either party intend to file a motion pursuant to RCFC 12(b), 12(c), or 56, and,**

**if so, what is the schedule for the intended filing?**

CRIT's Position:

Because the Government already has filed an Answer to the Amended Complaint, CRIT perceives no basis for it to file a motion pursuant to RCFC 12(b). With respect to Phase I, CRIT anticipates that one or both parties may file a motion for (partial) summary judgment after discovery is completed. CRIT believes that the parties should postpone the filing of any motions pursuant to RCFC 56 concerning CRIT's Phase II, III, and IV claims.

CRIT opposes the Government's request that CRIT should now be compelled to file a detailed statement of its claims and damages in Phase I, following which the Government would have 120 days to engage in jurisdictional discovery and an additional 90 days in which it could decide to file a motion challenging jurisdiction. This request contravenes RCFC 8(a), which requires only a short and plain statement of the grounds upon which the court's jurisdiction depends and a short and plain statement of the claim showing that the pleader is entitled to relief. "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is the and grounds upon which it rests.' This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz v. Sorema, 534 U.S. 506, 512 (2002).

Furthermore, CRIT already has outlined its Phase I claims in sufficient detail for the Government to formulate any jurisdictional challenge it may care to raise. More detailed pleadings and special jurisdictional discovery are completely unnecessary. They are merely a pretext for delaying the commencement of real discovery in this case for at least eight - ten months – the seven months that the Government requests plus additional time for CRIT to file a responsive pleading and the Government to file a reply, plus time for the Court to decide the

motion.

United States' Position:

The United States proposes to file a RCFC 12(b) motion to dismiss pursuant to 28 U.S.C. § 1500, within 30 / 45 days of this Court's issuance of a scheduling order based on this JPSR. The Court should stay the litigation of this case pending the adjudication of the United States' motion, for reasons of judicial economy and efficiency and conservation of the parties' and the Court's scarce resources.

In the event that the Court finds that it has jurisdiction to hear this case, the United States contemplates raising jurisdictional defenses through dispositive motion practice pursuant to RCFC 12(b) or RCFC 56 later, during the litigation of each phase of the case. Given the broad nature of CRIT's claims, before the United States can seek dismissal or summary disposition of some or all of the claims, the Court should compel CRIT to file a detailed statement of its claims in Phase I, including: (1) specification of the particular rights-creating or duty-imposing sources of law underlying the claims; (2) the precise breach(es) of those duties that CRIT alleges; (3) a concise statement of the alleged operative facts constituting the asserted breach(es) of duty; and (4) the alleged damages resulting from such alleged breach(es). After CRIT has specified its claims, the Court should authorize the United States to engage in discovery, for 120 days, to determine the basis, if any, for this Court's subject matter jurisdiction over the specified claims. Ninety days after completion of this discovery, the United States would raise its jurisdictional defenses by way of RCFC 12(b) or 56 motion, if it concludes that doing so would be appropriate.

In the event that the Court allows CRIT to delay or defer the filing of a detailed specification of claims until after CRIT has promulgated its expert report(s) or to supplement its detailed specification of claims after CRIT's promulgation of its expert report(s), the Court

should extend, by a commensurate amount of time: (1) the period for the United States to take discovery to determine the basis, if any, for the Court's subject matter jurisdiction over the specified claims; and (2) the period for the United States to file any jurisdictional motions.

**H. What are the relevant factual and legal issues?**

CRIT's Position:

CRIT considers the following to be the relevant factual issues for Phases I and II of this case:

1. Whether and, if so, to what extent the Government failed to collect and deposit all lease payments and other revenues due to CRIT;

2. Whether and, if so, to what extent the Government failed to manage revenues it collected and held for CRIT's benefit appropriately, such as mis-stating or failing to account properly for receipts and deposits of monies; making unauthorized or invalid disbursements of CRIT's funds; taking too long to deposit funds into CRIT's accounts; and deducting funds prematurely from CRIT's accounts, i.e., when checks were written rather than when they cleared.

3. Whether and, if so, to what extent the Government failed to invest CRIT's funds appropriately so as to maximize income.

4. What damages, if any, CRIT suffered as a result of the Government's alleged breaches of fiduciary duty.

CRIT believes that the relevant legal issues concern the nature and extent of the Government's fiduciary duties with respect to collecting, managing, and investing funds for CRIT, and computing damages for any breach(es) of such duties.

CRIT proposes that the parties address the factual and legal issues relevant to Phases III and IV at a later time, after the completion of Phase I and, possibly, Phase II.

United States' Position:

In the United States' view, it is presently premature to identify the factual and legal issues (including those for Phase 1) that this Court may have to address at trial on liability or damages, because the precise contours of those issues depend on jurisdictional rulings that the United States plans to request from the Court. Nonetheless, the United States sets forth some factual and legal issues that are or may be relevant to the Court's jurisdiction over CRIT's claims in this case, including Phase I. This listing is not intended to be a complete or comprehensive identification of issues and is subject to revision, depending upon certain events, including but not limited to such items as the discovery process.

1. Whether 28 U.S.C. Section 1500 precludes jurisdiction in this case.

2. Whether the statute of limitations, 28 U.S.C. § 2501, bars some or all of CRIT's claims.

a. Whether CRIT's claims fall within the language of the Interior Appropriations Act ("IAA"), as the United States Court of Appeals for the Federal Circuit construed that language in Shoshone Indian Tribe v. United States, 364 F.3d 1339, 1350-51 (Fed. Cir. 2004). The IAA provides, in relevant part, that a Tribe's claims related to loss or mismanagement of its trust funds shall not begin to accrue until the United States Department of the Interior has provided an accounting from which the Tribe can determine its losses. See Pub. L. No. 108-447, 118 Stat. 2809; and

b. Whether CRIT's claims accrued more than six years before the filing of this case.

3. Whether the Court has jurisdiction over CRIT's claims under the Tucker Act or the Indian Tucker Act, 28 U.S.C. §§ 1491(a)(1) and 1505.

a. Whether CRIT's claims are based on substantive sources of law, such as a statute, treaty, or regulation that establish specific fiduciary or other duties;

b. To the extent that CRIT's claims are based on specific duties established in substantive sources of law, whether a breach of those duties would mandate the payment of compensation;

c. Whether CRIT has sufficiently alleged that the United States has failed to perform any specific money-mandating duties; and

d. Whether CRIT's claims were within the exclusive jurisdiction of the Indian Claims Commission.

4. Whether the doctrines of claim and/or issue preclusion apply to bar any or all of CRIT's claims.

**I. What is the likelihood of settlement? Is alternative dispute resolution contemplated?**

CRIT's Position:

CRIT is hopeful that a settlement of the Phase I claims can be achieved eventually, but there is no realistic possibility of doing so until after document discovery is completed and expert analyses of damages have been conducted, at least in a preliminary fashion. CRIT does not contemplate any alternative dispute resolution ("ADR") at this time.

United States' Position:

The parties began exploring the possibility of settlement discussions shortly after CRIT filed this case. For that reason, the United States requested, and CRIT did not oppose, extensions of time, to and including March 3, 2008, for the United States to file its Answer or otherwise respond to the Complaint. See Dkt. Nos. 5, 7, 10, 15.

The United States continues to believe that there may be a potential for settlement, ADR, or other informal resolution of CRIT's claims, without the need for protracted litigation. This potential may exist especially as to the issues and claims that CRIT proposes to raise in Phase I of this case. For that reason, it remains open to the possibility of further efforts with CRIT that would be aimed at reaching a mutually acceptable settlement in this matter. Accordingly, the United States has been and continues to be willing to engage in formal ADR or informal measures, such as the production of relevant or potentially relevant documents and data about CRIT's trust funds and non-monetary trust assets, outside of the context of formal discovery or litigation, so as to inform the parties in their settlement, ADR, or informal resolution process.

At the same time, however, the United States notes that it is very difficult for the parties to conduct meaningful settlement or ADR discussions while they are actively preparing for trial.

**J. Do the parties anticipate proceeding to trial? Does either party, or do the parties jointly, request expedited trial scheduling and, if so, why?**

<u>CRIT's Position</u>:

CRIT anticipates proceeding to trial on its Phase I claims in the event that a settlement is not reached. CRIT does not request an expedited trial schedule.

<u>United States' Position</u>:

At this point, the United States is uncertain whether Phase I or any other phases of this case will proceed to trial. As stated in the United States' responses to Questions A, G, and H above, it is possible that dispositive motion practice may resolve this case in whole or in part. Moreover, as the United States noted in its response to Question I above, it remains willing to engage in settlement discussions, ADR, or other means of resolving Plaintiff's issues and claims informally, without the need for extended litigation, especially if the litigation of the case were

temporarily stayed for such a purpose.

If this case does proceed to trial, however, the United States generally does not believe that such a trial can be accomplished in an expedited manner. In any event, in the interest of judicial efficiency, economy, and conservation of resources, the Court should defer any scheduling of pre-trial proceedings or of the trial itself, until after CRIT has provided its detailed specification of claims, the parties have briefed the jurisdictional issues related to the specific claims, and the Court has ruled on those jurisdictional issues. As discussed above, the jurisdictional issues involve such threshold questions as whether CRIT has shown the existence of money-mandating duties and whether the statute of limitations bars CRIT's claims.

**K. Are there special issues regarding electronic case management needs?**

The parties do not foresee any special issues regarding electronic case management.

**L. Is there other information of which the court should be aware at this time?**

CRIT's Position:

CRIT is not aware of any other information of which the Court should be aware at this time. For the reasons stated in CRIT's response to Question D above, CRIT believes that procedural developments in the accounting case in district court, Colorado River Indian Tribes v. Kempthorne, No. 06-CV-2212-JR (D.D.C.), are irrelevant to this action.

United States' Position:

The United States notes that, on May 6, 2008, the United States District Court for District of Columbia stated that "[t]he government will move to dismiss some or all of the claims in Nez Perce, et al. v. Kempthorne, et. al., No. 06-2239, by June 5, 2008." Colo. River Indian Tribes v. Kempthorne, No. 06-CV-2212-JR (D.D.C.), Order, at 3, filed May 6, 2008. The Court went on to state that "the government is invited to file its motion to dismiss in all of the tribal cases that

present the same or similar issues that will be briefed in Nez Perce," id. at 4, which include CRIT's companion case in the District Court. The District Court ordered that briefing related to its May 6, 2008 Order be completed by July 17, 2008. See id. at 4. The District Court scheduled oral argument on the anticipated motion on July 24, 2008, providing that "[o]ther tribal plaintiffs wishing to be heard," including, potentially, CRIT, may file motions seeking to be allotted argument time. Id. at 5.

**M. Proposed Discovery Plan**

CRIT's Position:

CRIT proposes the following discovery plan for Phase I:

- Document discovery to be completed by December 31, 2008.
- Depositions of fact witnesses to be completed by February 27, 2009.
- The Parties to exchange initial reports of their respective experts on March 31, 2009.
- Depositions of expert witnesses to be completed by May 15, 2009.
- The Parties to exchange rebuttal and any updated expert reports by June 8, 2009.
- Depositions of expert witnesses regarding rebuttal or updated reports to be completed by July 10, 2009.
- Trial in October or November 2009.

CRIT anticipates that document discovery for Phase II will be accomplished, for the most part, at the same time as document discovery for Phase I. In other words, if the parties are obtaining or producing documents for Phase I from a particular repository, they will at the same time obtain or produce documents for Phase II. Beyond that understanding, CRIT is not proposing a discovery schedule for Phases II through IV at this time. Pending the resolution of Phase I, the Parties may conduct informal discovery with respect to these other Phases subject to

the terms and procedures of the Confidentiality Stipulation and Order.

CRIT notes that its proposed schedule would lead to a trial of the Phase I claims, absent a settlement, in about 18 months. In sharp contrast, the Government proposes a schedule that would require – easily – three years to get to trial. If the Government's schedule is repeated with respect to each of the subsequent phases, this action would take at least another twelve years to resolve. This is patently unacceptable, especially when (1) CRIT is pursuing claims against its trustee seeking recompense for longstanding breaches of fiduciary duty, and (2) this action is being adjudicated under rules of procedure that are to be construed and administered "to secure the just, speedy, and inexpensive determination of every action." RCFC 1. CRIT is prepared to be practical and realistic in devising a discovery plan and trial schedule in this case, but it will not acquiesce in Government "foot-dragging" or requests for delay whenever and wherever possible.

CRIT does not agree that a period of one year should be allowed simply to complete the production of documents for Phase I. CRIT believes that document discovery can and should be completed by the end of this year. This is not the daunting project that the Government suggests. CRIT has purposefully focused Phase I on the Arthur Andersen period (1972-1992) because the Government has previously compiled, coded, and imaged many of the relevant records for this period, and had Arthur Andersen analyze them. Thus, the Government has a substantial "leg up" in responding to the claims in this phase.

At CRIT's request, in the fall of 2006 the Government supplied CRIT with a copy of the so-called CRIT AA report. These documents include the AA report itself, annual financial statements for CRIT's largest and several smaller tribal trust accounts, and the "supporting documents" compiled by Andersen. These total approximately 10,000 pages of materials that

Andersen used to analyze the receipts and disbursements transactions involving CRIT's trust accounts during this 20 year period.

Any remaining documents are almost certainly located at the American Indian Records Repository ("AIRR"), a central trust records document depository in Lenexa, Kansas. The Department of the Interior has made glowing public pronouncements about the significance and efficiency of this "state of the art" facility and its full time staff of 650 employees.

Moreover, CRIT simply does not accept the proposition that the Government is entitled to months or years to develop its case after CRIT completes discovery and produces its expert reports. The parties can and should be expected to pursue discovery and develop their respective cases simultaneously, including responses to each others expert witnesses. This approach is eminently fair. It is routinely used in litigation between private parties and has been used successfully in other Indian breach of trust litigation before this Court.

United States' Position:

If this Court rules that 28 U.S.C. § 1500 does not bar its jurisdiction and the litigation proceeds, discovery in the proposed Phase I of this case (as in other phases) should proceed in three distinct stages and should be conducted in accordance with the RCFC.

The first stage would consist of the factual discovery that CRIT needs to delineate and define the claims it raises. Such discovery should be limited to document productions, interrogatories, and requests for admission.

As counsel for the parties have discussed, documents that are relevant or potentially relevant to CRIT's issues and claims herein are located at multiple locations, including federal records repositories, around the country. Those documents may be found in hundreds, possibly thousands, of boxes of retired federal records, as well as in active government records. So that

the United States may respond to CRIT's discovery requests adequately, the parties would undertake the following process:

1. The parties would identify the boxes that may contain responsive documents;

2. The Solicitor's Office of the Department of the Interior would conduct a pre-inspection privilege review of the identified boxes;

3. CRIT's counsel and/or their designees would inspect the boxes and identify those documents it wishes produced; and

4. The United States would image, code, and conduct a post-inspection privilege review, before producing the images of the requested documents to Plaintiff, pursuant to the confidentiality protective order that the parties negotiated and that this Court approved.

Based on the United States' experience in other Tribal trust accounting and trust mismanagement cases, depending on the documents CRIT request, it likely will take longer than 270 days to complete this production process. Based upon CRIT's representation that it will not insist on such measures as a document confidentiality review before production to CRIT, the United States may be able to complete its production process within 270 days of receiving CRIT's production request. Until CRIT propounds document or other discovery requests, the United States is unable to estimate accurately the amount of time that the Court should allow to complete discovery for this first phase of discovery. For purposes of a proposed scheduling order, however, the United States proposes 360 days for completion of the initial phase of discovery.

The second stage of discovery would begin after Plaintiff files a specific statement of its claims. This stage would be limited to the fact discovery pertinent to the United States' jurisdictional challenges (e.g., whether CRIT's claims accrued more than six years before the

filing of this litigation). Although it is difficult to predict the extent of that discovery at this time, i.e., before CRIT has detailed the specifics of its claims, the United States proposes, for purposes of preliminary planning, that the second phase proceed for 120 days. Within 90 days of the conclusion of this discovery, the United States would file its dispositive motions raising its jurisdictional defenses.

Once the Court has resolved the jurisdictional issues and assuming that the Court finds a jurisdictional basis for proceeding with this litigation, the United States proposes that the parties confer about the scheduling of the third or final stage of discovery and propose a schedule for that discovery to the Court. During this phase, the parties would conduct any remaining fact discovery, including fact or RCFC 30(b)(6) depositions, based on the specific claims (if any) that have survived the United States' jurisdictional challenges. In addition, the parties would conduct expert witness discovery and otherwise prepare the case for trial.

In the United States' past experience with other Tribal trust accounting and trust mismanagement cases involving similar complex breach of trust claims, a plaintiff's full articulation of its claims, as well as the legal and factual bases for those claims, typically do not occur until after the plaintiff has disclosed its expert witnesses. Accordingly, as soon as the United States obtains CRIT's expert witness disclosures, the United States will likely need to conduct further research to identify and develop evidence from voluminous retired records, not only to rebut CRIT's claims but also to support the United States' own expert analyses. Without sufficient time to conduct this additional research, the United States would be prejudiced in its ability to prepare and present an adequate defense at trial. Therefore, to foreclose this kind of prejudice, the United States proposes that its expert witness disclosures be required no less than 180 days after CRIT's expert disclosures.

Respectfully submitted this 3rd day of June, 2008,

RONALD J. TENPAS
Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

By: *s/ Steven Gordon by s/ Matthew M. Marinelli*
*pursuant to written authorization on June 3, 2008*
MATTHEW M. MARINELLI
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
Ben Franklin Station, P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-0293
Fax: (202) 353-2021

Attorney of Record for Defendant

OF COUNSEL:

MARK S. BARRON

ANTHONY P. HOANG
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
Ben Franklin Station, P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-0490
Tel: (202) 305-0241
Fax: (202) 353-2021

KENNETH DALTON
JASON HARTZ
Office of the Solicitor
United States Department of the Interior
Washington, D.C. 20240

TERESA E. DAWSON
Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury
Washington, D.C. 20227

By: HOLLAND & KNIGHT LLP

*s/ Steven Gordon*
STEVEN D. GORDON (D.C. Bar No. 219287)
Holland & Knight L.L.P.
2099 Pennsylvania Ave. NW, Suite 100
Washington, D.C. 20006
Tel: (202) 955-3000
Fax: (202) 955-5564

Attorney of Record for Plaintiff

OF COUNSEL:

LYNN E. CALKINS (D.C. Bar No. 445854)
STEPHEN J. MCHUGH, (D.C. Bar No. 485148)
Holland & Knight L.L.P.
2099 Pennsylvania Ave. NW, Suite 100
Washington, D.C. 20006
Tel: (202) 955-3000
Fax: (202) 955-5564

ERIC N. SHEPARD

Attorney General
Colorado River Indian Tribes
Route 1, Box 23-B
Parker, AZ 85344

# 5378717_v3